UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION


United States of America,       )
                                )
          Plaintiff,            )
                                )
     vs.                        )     Case No. 1:20CR14
                                )
Michael Peyton Gunn,            )
                                )
          Defendant.            )
_____)


SENTENCING HEARING
BEFORE THE HONORABLE J. RANDAL HALL
CHIEF UNITED STATES DISTRICT COURT JUDGE
TUESDAY, MAY 24, 2022; 9:58 A.M.


FOR THE PLAINTIFF:

     Tara M. Lyons, Esquire
     U.S. Attorney's Office
     Post Office Box 2017
     Augusta, Georgia 30903
     (706)724-0517

FOR THE DEFENDANT:

     Shawn M. Merzlak, Esquire
     Hawk Law Group
     338 Telfair Street
     Augusta, Georgia 30901
     (706)722-3500

OFFICIAL COURT REPORTER:

     Lisa H. Davenport, RPR, FCRR
     Post Office Box 5485
     Aiken, South Carolina 29804
     (706)823-6468

1        (Call to Order at 9:58 a.m.)

2            THE CLERK:  The court calls case number 1:20CR14.  The

3    United States of America v Michael Peyton Gunn.  Tara Lyons for

4    the government.  Shawn Merzlak for the defendant.  Here for

5    sentencing.

6            THE COURT:  Good morning.

7            MS. LYONS:  Good morning, Your Honor.  May I raise one

8    minor matter before we get started?

9            THE COURT:  Yes.

10           MS. LYONS:  That's simply that the minor victim is in

11   the courtroom today.  She has chosen to be present.  I would

12   ask any transcript of record to refer to her by minor victim or

13   her initials.  I know that we will do our best not to state her

14   name while we're in the courtroom.  I would ask that since the

15   courtroom is open that if her name is stated that anyone in the

16   courtroom remember not to state that once they leave the

17   courtroom or to print that in anything if there are any members

18   of the press present today.  Thank you, Your Honor.

19           MR. MERZLAK:  We have no objection to that, Judge.

20           THE COURT:  All right.  So be it.

21           All right.  Mr. Merzlak, if you and Mr. Gunn will come

22   to the lectern, please, we will move forward.  Michael Peyton

23   Gunn appeared before this court on November 15, 2021,

24   accompanied by his attorney, Mr. Shawn Merzlak, for a jury

25   trial.  On November 18, 2021, Mr. Gunn was found guilty of

1   count one of the Superceding Indictment charging him with sex

2   trafficking conspiracy in violation of 18 U.S.C. § 1594(c),

3   count two of the Superceding Indictment charging him with sex

4   trafficking of a child in violation of 18 U.S.C. § 1591(a),

5   count three of the Superceding Indictment charging him with

6   coercion and enticement of a child to engage in sexual activity

7   in violation of 18 U.S.C. § 2422(b), counts four, five, six,

8   and seven of the Superceding Indictment charging him with

9   production of child pornography by a parent or guardian in

10  violation of 18 U.S.C. § 2251(b), count eight of the

11  Superceding Indictment charging him with possession of child

12  pornography in violation of 18 U.S.C. § 2252(a)(A)(5)(b) and

13  count nine of the Superceding Indictment charging him with

14  obstruction of a child sex trafficking investigation in

15  violation of 18 U.S.C. § 1591(d).

16          Subsequent to the jury's verdict the Court directed

17  the probation office to prepare a Presentence Report and to

18  disclose the report to the government and to Mr. Gunn.

19          Has the government completed its review of the

20  Presentence Report?

21          MS. LYONS:  Yes, your Honor.

22          THE COURT:  And you have no outstanding objections?

23          MS. LYONS:  Correct.

24          THE COURT:  Mr. Merzlak, have you and Mr. Gunn

25  completed your review of the Presentence Report?

1          MR. MERZLAK:  Yes, Your Honor.

2          THE COURT:  And there are no objections filed by you

3    at this time?

4          MR. MERZLAK:  That's correct.

5          THE COURT:  There being no objections to the factual

6    statements or to the probation officer's conclusions as to the

7    applicable advisory guidelines contained in the report, the

8    Court now adopts those facts and conclusions and determines

9    that the applicable advisory guidelines are total offense level

10   43, criminal history category I, life imprisonment, five years

11   to life of supervised release, $50,000 to $250,000 fine,

12   restitution of $800,000 and a $900 special assessment which is

13   $100 as to each count of conviction.

14        All right.  At this time I will hear testimony from

15   the victim who is present and wishes to make any statement

16   regarding the impact of this case on them.

17        MS. LYONS:  Your Honor, if we may, may we first call

18   the victim's custodian to make a statement and then I'll read a

19   statement from the victim?

20        THE COURT:  All right.  You want her to do it from

21   over here?  Is that okay?

22        MS. LYONS:  Yes, that's fine.

23        If you'll please state your name for the record and

24   speak into the microphone.

25        MRS. ASHLEY COXWELL:  My name is Ashley Coxwell.

Years ago my young sister Amanda dated Peyton in high school
for a short period of time.  They reconnected online after my
sister divorced her then-abusive and drug-addicted husband
Jacob.  During Amanda's marriage to Jacob she gave birth to an
amazing little girl.

Even though Jacob adored their child and so did his
family, one day he and his family vanished shortly after Amanda
and Peyton were married.  They would not return our calls from
any of our family members.  It was strange behavior, but we
accepted it.  We did not hear from them until after Peyton's
arrest made the local news.  That is when we were informed by
the family that Peyton had threatened to blackmail, rape, and
torture their family if they had any communication with Amanda,
her daughter or our family.  They were scared enough that they
took his threats seriously and stayed away silent for over ten
years -- ten years Jacob and his family lost watching their
daughter, niece, and granddaughter grow into the beautiful
young woman she is today.  Jacob died while Amanda and Peyton
were married.  So my niece was never allowed to have her real
father in her life.  She was so young when her biological
father was alive she is only able to remember him by pictures.

Now fast forward.  Amanda and Peyton married.  Peyton
adopted her daughter and changed her last name to his.
Everyone had a crazy notion they would have a happy little
military family.  Well, now we know we were wrong.  Whenever my

1  sister and her little family moved back to Georgia, my family

2  was over the moon.  Me and my sister grew to be very close like

3  best friends.  However, there were moments when I started to

4  notice changes in her, times that she had bruises on her, times

5  that she would text asking for help.  My mom and I would rush

6  over there and Peyton wouldn't allow us up the stairs until I

7  pushed my way by him.  I would find her on the bed sleeping and

8  unable to make full sentences.  Peyton told me that she took

9  sleeping pills and was resting.

10  Even when my sister tried to commit suicide Peyton

11  admitted he waited over 30 minutes before taking her to the

12  hospital.  When she was released he was sitting on the edge of

13  their bed at my parents' house when I walked her through the

14  doors as he was sharping a knife.  The typical husband would

15  have asked how she was doing, but, no, he continued to sharpen

16  the knife next to her.

17  Even when my sister, Peyton, and me lived with my

18  parents I was not allowed to speak with the children.  Whenever

19  I walked into the room the kids were sent to the back room

20  where they all stayed.  I think it is because he knew I would

21  figure out his little scheme.

22  My sister and Peyton had a son -- the son who is in

23  elementary school today, the child that was taught to degrade

24  women, show no emotion, and that men were superior to women.

25  He is also a victim.

1          When Peyton was first arrested I did not know the
2  reason why.  It was not until Peyton's arrest did all of the
3  skeletons and lies start to unravel.  My niece came to live
4  with me and my husband from the beginning and continues to live
5  with me today.  I remember when she would ask if it was okay
6  for her to get food out of the pantry.  She couldn't sleep at
7  night because she would have flashbacks.  She told me all the
8  bad stuff used to happen to her at night so that's why she
9  couldn't sleep.

10          She was on drugs -- many drugs -- alcohol almost daily
11  since a very young age.  She suffers from severe depression,
12  anxiety, PTSD, body dysmorphia, and paralyzing flashbacks.  We
13  as a family had to learn certain smells that triggered her,
14  certain tools like saws that her arm was once put against can
15  trigger flashbacks.  My family has had a lot of learning to do
16  and spent hours listening of past events.

17          For years Peyton told my sister and my niece of a fake
18  group called the Order which had them under watch and would
19  harm them or our family if they did not do as told.  Amanda, my
20  niece, strongly believed this group was real, as real as the
21  sky is blue.  Why would they believe so hard in people they
22  never met?  Because they would get letters, emails, messages
23  sent to them on topics only family members would know.  So
24  someone had to be watching them from the outside, right?  There
25  were house shootings, tires slashed, break-ins, and they were

1    being tracked and so much more all done and put on by Peyton

2    a/k/a the Order.  The Order said that women of the house had to

3    sleep with men, be tied, drugged, beaten to appease this fake

4    group.  No, it was for his own sick sexual gratification.

5         My niece did not grow up with a loving father.  She

6    grew up with a man who would rape, sold her, and do so much

7    worse.  She now knows self worth.  She now knows she will be

8    something.  She is not trash.  She is not only good for sex.

9    She goes to church.  I am extremely proud of her.

10        She will be everything that you told her she would not

11   be.  I will personally make it my life's mission to see that

12   she succeeds.  Even at a young age she is a better person, a

13   more accomplished individual than you ever were or will be.

14   She went from being a scared, suicidal child to being a strong

15   fearless and self-powering woman who is helping other children

16   with their own struggles.  She will not allow her past to form

17   the person she is.  She has taken the strength and focused on

18   other children and needs.

19        Years ago Peyton asked me what I thought of him.  My

20   mom warned him then because she knew I would speak the truth

21   and not back down.  Well, I stand here to say my opinion has

22   not changed.  If anything, it has grown from dislike to hate.

23   My opinion?  You should not be able to breathe another moment.

24   You should not be allowed to waste the government's money or

25   anyone's time with your twisted, psychotic lies you continue to

1    say and believe.  You are such a low-life that you could not

2    get a real job so you decided to sell your wife and your

3    adopted daughter.

4            Have you taken a life away?  Did you murder them?  No.

5    That was not for lack of trying.  You took years.  You took

6    opportunities and memories from Amanda and my niece.  By

7    holding my niece's head under the water time after time, I

8    consider that attempted murder.  What should have been happy

9    childhood memories are memories of being tortured, raped, being

10   put in bondage and sold.  You took a mother from her son and

11   daughter, a mother who is now in jail because of you, a mother

12   who previously worked multiple jobs to help bring money to the

13   family with a career.

14           I hope God and this Court has no mercy on you and for

15   every needle you injected, you feel it.  For every rope you

16   tied, I hope you feel it twist around your neck.  I wake up

17   every morning hoping to get a call saying you killed yourself

18   or you were dead.  Until that moment comes, my heart will not

19   be fulfilled.  You do not deserve to live in a close facility

20   because no one wants to see you, not even the son that you had

21   with another woman and tried to hide.

22           MS. LYONS:  Your Honor, if I may, on behalf of the

23   minor victim.

24           THE COURT:  Yes.

25           MS. LYONS:  "I have probably started writing this

letter a thousand times because I didn't know what I wanted to say.  I was just going to pick out a feeling or two that I felt, but it never sounded right.  Instead, I convinced myself to just speak my mind.  Saying all of this is probably one of the hardest things I have ever had to do, but I know it will be worth it.

I know that I cannot make you feel bad about anything you did to me.  I have come to terms that guilt is not something you can feel.  You took seven years of my life, seven years of my childhood, seven years that I will never get back.  You promised to be a father, and instead of protecting me, you harmed me.  You took my innocence and you took advantage of my young and vulnerable mind and body.

You were the adult and I was the child, yet I still held the role of a wife, mother, and more than I should have been burdened with.  You broke me which is something I will forever hate to admit because I think saying that honestly makes you happy which just is not the goal at all.  I grew up faster than anyone should have to and that's not something I can change or get back.

I hate you and I mean that honestly.  I hate the idea that you touched every part of me, my mind, my body and my life, but what I have come to realize about hatred is that there is no point to it.  It is a waste of my energy.  You controlled me before, but what I want you to understand and sit

1 with is that you are completely powerless over me now and I

2 hope that drives you crazy.  I was broken and I put myself back

3 together.  You said I was nothing and that I would never be a

4 leader.  How wrong you were.  I am more than you can imagine.

5          I am not worthless.  I am not Satan's daughter, but a

6 child of God.  I am nothing you said.  I'm sure you would have

7 hoped that your words would have kept me down, but they did the

8 opposite, actually.  They motivated me to be nothing like what

9 you wanted me to be.  What you did and what you made me do was

10 wrong.  It was.  You knew it was wrong, yet you didn't care and

11 you probably still believe in everything you did then which is

12 really sad, honestly.  But wrong actions have consequences and

13 I hope you sit in that cell for the rest of your life.  Have a

14 good day."

15          THE COURT:  Thank you.  Anything else then from the

16 government in terms of victim's statements?

17          MS. LYONS:  Nothing in terms of victim's statements,

18 Your Honor.

19          THE COURT:  All right.  Well, Mr. Merzlak, I'll now

20 hear from you on anything you'd like to offer in mitigation of

21 the sentence.

22          Mr. Gunn, the law provides you have a right to make a

23 personal statement to the Court before the imposition of

24 sentence.  If you wish to make a statement or if there is any

25 additional information that you would like for me to consider,

1  this would be the time to present it, but, Mr. Merzlak, I'll

2  look to you now.

3        MR. MERZLAK:  Thank you, Your Honor.  As Your Honor is

4  aware, it is a very, very difficult case for everybody

5  involved, and I know on behalf of Peyton and myself, we

6  wouldn't wish that difficulty on anybody involved in this case.

7  While saying that, I think it is important to on behalf of

8  Mr. Gunn explain that while he maintains his innocence in these

9  charges, he understands the evidence that was presented, and we

10 respect the verdict of the jury, and Peyton respects what this

11 Court must do in terms of sentencing with the charges that he

12 was convicted of.

13       Peyton is 37 years old now.  I came to meet Peyton

14 when this court appointed me to represent him over two years

15 ago and we've spent a lot of time together discussing his life,

16 discussing his case, and things of that nature.  He grew up

17 here, you know, in the Augusta area, graduated from the same

18 high school that I graduated from, although five years later.

19 I never knew Peyton back then at that time, but he graduated

20 from Lakeside High School and eventually attended college for a

21 brief period without graduating.

22       Peyton, like the minor child in this case, was adopted

23 at the age of one by his parents, Michael and Jill Gunn, and

24 grew up, you know, what seemed to be a normal suburban life in

25 this area like many of us did as well.  Although he did suffer

from some mental illness that I believe he continues to suffer

from minorly, prior to him joining the United States military

he was diagnosed with manic depression.  He spent some time

in ---

THE DEFENDANT:  I was never diagnosed with manic

depression.

MR. MERZLAK:  He had spent some time at Serenity

Hospital and in 2006 to 2007 in Charlottesville, Virginia had

some mental health challenges, most of which happened when he

was in the military.  He spent four years with the United

States Military.  He was operator and driver of troop carriers,

armored personnel carriers, and during that time spent time in

combat in Afghanistan where he was in very, very close

proximity to multiple mortar attacks.

As a result of that service with the military, he

suffered from major bulging discs in his back in multiple

locations and as well suffered from chronic post-traumatic

stress disorder and some nerve damage in the right side of his

body which he has been treated for on and off and has done at

least a year or year and a half of counseling.

He has very minimal criminal history as the Court is

aware, and upon being discharged from the military started

trying to produce a software web-based business where he was

trying to grow a business, spent some time in Morocco trying to

develop that business further before moving back to the United

1  States with his family.

2          It is a difficult case for me to talk to the Court

3  about based on the position that it stands.  Mr. Gunn indicates

4  that he does intend to appeal the case, but I think the most

5  important thing to look at is the actual sentencing factors

6  that the Congress has put in order for us under 3553 and

7  understand that life in prison is not necessarily the best

8  choice for a person like Mr. Gunn.  I think when you look at

9  the nature and circumstances of the offense as well as his

10  personal history and his personal characteristics, a sentence

11  of less than life in prison may be appropriate in this

12  particular case.

13          We acknowledge the seriousness -- severe seriousness

14  -- of the offenses, but we have to look at, you know, what is

15  actually in place to deter this kind of conduct, to deter

16  Mr. Gunn from ever being accused or committing this type of

17  conduct and to deter others from committing this type of

18  conduct.  I would suggest to the Court that an appropriate

19  sentence range would be about 33 years.  Thirty-three years

20  would put Mr. Gunn at 70 years before -- 70 years old before he

21  is ever eligible for supervised release.  I know that the term

22  of supervised release is going to be lengthy, if not life.

23          Those conditions that the Court can place under him

24  during supervised release as well as the sex offender registry

25  characteristics can assure all of society that he would never

1   be in a position to commit any type of crime like this and I'm

2   sure the Court is aware that the chance of or statistics of

3   recidivism on someone who is 70 years or older is extremely

4   minimal, especially after serving such a long prison sentence.

5          I will point out to the Court that despite Mr. Gunn

6   maintaining his innocence I think a very redeeming

7   characteristics of him is that when the government proposed

8   over $800,000 in restitution, Mr. Gunn immediately said that he

9   was 100 percent fine with that and wanted that restitution to

10  be ordered in the case because he knows that anyone that is

11  found in possession of any of these photos of the minor victim

12  could be subject to paying restitution that will go towards

13  assisting her and the treatment, counseling, and therapy that

14  she's undergoing and seems to be doing quite well in.

15         As I indicated, Mr. Gunn has very minimal prior

16  criminal history.  He does have some medical issues, some minor

17  mental illness issues as well as some back issues.  We believe

18  that the appropriate placement for him would be in Butner,

19  North Carolina if the Court would indulge that request.  It

20  also has the availability of sex offender treatment and

21  counseling that will probably be a part of any sentence that

22  Mr. Gunn receives.  The secondary location that we would

23  request would be Marianna, Florida.  I believe they are

24  situated almost identical to Butner, North Carolina in terms of

25  medical treatment and sex offender treatment and counseling

1   that's available at that position.

2          From the time we were waiting on a verdict in this

3   case and even before that Mr. Gunn has exhibited a very

4   peaceful nature of what was to come and has repeatedly

5   explained to me that, you know, whatever the jury says, you

6   know, he's at peace with; whatever the Court sentences him to,

7   he's at peace with.  He's always been respectful to me.  He's

8   always been helpful in answering my questions.  He's always

9   been intellectual and thoughtful when speaking to him.

10          He sits here today alone with the exception of me.  He

11  has no family here to support him.  His mother and father both

12  indicated to me that they would not be coming.  So he's what I

13  get -- excuse me.  He is -- I am what he gets, and I hope that

14  I've done the best job that I can to advocate on his behalf

15  despite what we saw during the trial.

16          We would just ask you to take that all into

17  consideration, Judge Hall, and possibly departing from the

18  sentencing guideline of life in prison and sentence him to a

19  range in the approximate of 33 years.

20          THE COURT:  Thank you.

21          Mr. Gunn, do you wish to say anything?

22          THE DEFENDANT:  I do not, Your Honor.

23          THE COURT:  Very well.  Having heard from the

24  defendant's counsel, I'll now hear from the government.

25          MS. LYONS:  Thank you, Your Honor.  May it please the

1    Court.  Before I start with any comments regarding the specific

2    sentence in this case, I would just like to put on the record

3    that the United States and the victim has requested restitution

4    in the amount of $800,000.  That has been agreed upon and

5    consented to by both defendants in this case:  Michael and

6    Amanda Gunn, Your Honor.

7              As it relates to a location in the Bureau of Prisons,

8    the government would object to Butner or the facility in

9    Marianna.  I have consulted with the victim and the victim's

10   family.  The United States would ask Your Honor to consider the

11   following facilities:  Terre Haute, Tucson, Beaumont, or

12   Pollock.  I think it's P-O-L-L-O-C-K.  As stated earlier in one

13   of the statements to the Court, the victim and victim's family

14   would like this particular defendant to be sent far away and,

15   of course, separation from Ms. Amanda Gunn is an issue.

16             I know that Mr. Merzlak mentioned Butner as a sex

17   offender treatment facility.  Candidly, Your Honor, as the

18   Project Safe Childhood Coordinator for this district I would

19   say that spaces at Butner belong to sex offenders who actually

20   have issues that can be resolved.  Mr. Gunn is a defendant who

21   made choices to abuse, torture, and manipulate this victim.

22   That's not resolved by treatment.

23             I am going to move into my statements regarding

24   sentencing in this particular case, Your Honor.  Your Honor, as

25   you consider the sentence today under 3553 I know the Court

1  needs to think about the nature and circumstances of the

2  offense.  An appropriate amount of time to adequately deter

3  criminal conduct of others, future criminal conduct by this

4  defendant, and to protect the public.  The United States

5  submits that nothing less than a life sentence is the

6  appropriate term of imprisonment for Michael Peyton Gunn.

7       I attempted over the last 48 to 72 hours to sit down

8  and summarize the nature and circumstances of this offense and

9  it was very hard to write complete sentences knowing that Your

10  Honor had sat through the testimony of this case.  I felt like

11  I was being repetitive, but certain words just kept going

12  through my head, Your Honor:  Abuse, mental, physical, sexual,

13  cruelty, calculating, manipulation, drugged, raped, tortured,

14  water-boarded, day after day, night after night, week after

15  week, year after year, 1 a.m., 2 a.m., 3 a.m., 4 a.m.,

16  pictures, videos, money, more pictures, more videos, more

17  money, brain washing, Satan, the Order, fear, dehumanization,

18  and debasing.

19       In November of 2021 over the course of four to five

20  days, Your Honor, you heard the minor victim testify.  You saw

21  emails where Michael Peyton Gunn was selling this child,

22  advertising this child.  Finally, Your Honor, you saw the

23  images of sexual and physical abuse at the hands of Michael

24  Peyton Gunn.  Some people may say that a picture is worth a

25  thousand words.  In this case there were no words for these

1   pictures.  There were tears.  There were tears for the

2   unbearable pain being endured by this child at the hand of this

3   man.

4           His offenses did not only impact this one child.  He

5   has harmed every member of the Gunn family and the Howard

6   family -- these family members who in hindsight wished that

7   they had said something or interceded or done something.  He

8   has harmed the children who were friends with the minor

9   victim -- the friends who wished that they had said something

10  or done something; the parents of those children who we spoke

11  to during our investigation who noticed something that was off

12  but every time Michael Peyton Gunn explained it away, they left

13  it alone.

14          This Court's sentence of life is the only adequate

15  amount of time to deter this man's future criminal conduct.

16  This Court's sentence of life in prison is the only solution to

17  protect this victim and the public from this man.  This is not

18  a man who can be trusted in society anymore.  He's proven that.

19  This is not a man who can be trusted around any children.

20  There is no circumstance that can ever be fashioned to ever

21  allow him to safely reside in a community.

22          The prison that he attempted to lock this victim in

23  for her life can only be matched by this Court's sentence of

24  life imprisonment.  The United States asks that this Court

25  impose 25 years as to count nine, 20 years as to count eight,

1  30 years as to count four, five, six and seven, and life in

2  prison as to counts three, two, and one.  Thank you, Your

3  Honor.

4          THE COURT:  I have now listened to Mr. Merzlak,

5  counsel for Mr. Gunn, noting that Mr. Gunn has elected not to

6  make a statement today.  I have listened to the government.  I

7  have listened to the victim's statement offered today and the

8  statement from the custodian for the minor victim.  I have

9  carefully considered the 18 U.S.C. § 3553(a) sentencing

10  factors.

11          Pursuant to the Sentencing Reform Act of 1984 it is

12  now the judgment of this Court that the defendant, Michael

13  Peyton Gunn, is hereby committed to the custody of the Bureau

14  of Prisons to be imprisoned for a term of life.  This sentence

15  consists of terms of life as to each of counts one through

16  three, 30 years as to each of counts four through seven, 20

17  years as to count eight, and 25 years as to count nine all to

18  be served concurrently.

19          I find no reason today to depart from the sentence

20  called for by application of the advisory guidelines inasmuch

21  as the facts as found are of the kind contemplated by the

22  Sentencing Commission.

23          I recommend that Mr. Gunn be evaluated by BOP

24  officials to establish his participation in an appropriate

25  program of substance abuse treatment and counseling including

the RDAP program during his term of incarceration.  Restitution

is due in the amount of $800,000 to the minor victim in this

case.  Unfortunately, the economic circumstances of Mr. Gunn do

not allow for payment of the full amount of restitution ordered

under any reasonable schedule of payments now or in the

foreseeable future.

Pursuant to 18 U.S.C. § 3664(f)(3)(B) nominal payments

of either quarterly installments of a minimum of 25 dollars if

working non-UNICOR or a minimum of 50 percent of monthly

earnings if working UNICOR shall be made.  If ever released

from imprisonment and while on supervised release, nominal

payments of a minimum of $500 per month shall be made.

Payments shall be made payable to the Clerk, United States

District Court for disbursement to the victim.  I have

determined that Mr. Gunn does not have the ability to pay

interest on this amount; therefore, it is ordered that the

interest requirement is waived.

After considering the factors set forth in Sentencing

Guideline 5E1.2(d) and the restitution obligation that I have

just imposed, I have determined that Mr. Gunn does not have the

ability to pay a fine.  I order that he shall pay to the United

States a special assessment of $100 as to each count of

conviction for a total of $900 which shall be due immediately.

I have determined that he does not have the ability to

pay the special assessment under the Justice for Victims of

1   Trafficking Act of 2015 in addition to the restitution ordered

2   today.  As such it is ordered that the special assessment is

3   waived.  He is also subject to a provisions of the Amy, Vicky,

4   and Andy Child Pornography Victim Assistance Act of 2018 which

5   requires a special assessment of not more than $50,000.  I have

6   considered the 18 U.S.C. § 3553(a) factors and 18 U.S.C. § 3572

7   considerations and I impose an AVAA special assessment of $100

8   as to each of counts four through eight for a total of $500.

9        By imposing the life sentence that I have just imposed

10  it is my belief that Mr. Gunn should never be released from his

11  imprisonment.  However, if for some reason he is ever released

12  from imprisonment, I place him on supervised release for a term

13  of life as to each count to be served concurrently.  While

14  serving any supervised release he shall comply with the

15  standard conditions of supervision adopted by this court and

16  the mandatory conditions required by 18 U.S.C. § 3583 which

17  will include, but not be limited to, urine testing, a

18  prohibition against possession of any firearm or other

19  dangerous weapon and a prohibition against the violation of any

20  law.  Further, Mr. Gunn shall cooperate in the collection of a

21  DNA sample as directed by the probation officer pursuant to

22  18 U.S.C. § 3583.

23        As a mandatory condition of supervision Mr. Gunn must

24  comply with the requirement of the Sex Offender Registration

25  and Notification Act as directed by the probation officer,

1   Bureau of Prisons or any state sex offender registration agency

2   in which Mr. Gunn resides, works, is a student or was convicted

3   of a qualifying offense.

4        While on supervised release Mr. Gunn shall comply with

5   certain special conditions.  I have considered the

6   18 U.S.C. § 3553 and 3583 factors and relevant policy

7   statements issued by the Sentencing Commission and I have

8   determined that these special conditions involve no greater

9   deprivation of liberty than is reasonably necessary to achieve

10  the purposes of sentencing.  The following special conditions

11  are imposed.

12       Mr. Gunn must submit to substance abuse testing to

13  determine if he has used any prohibited substance.  He must not

14  attempt to obstruct or tamper with the testing methods.  He

15  must provide the probation officer with access to any requested

16  financial information and authorize the release of any

17  financial information.  The probation office may share

18  financial information with the U.S. Attorney's Office.

19       Mr. Gunn must pay the financial penalty in accordance

20  with the schedule of payment sheet of the judgment.  He must

21  also notify the court of any changes in economic circumstances

22  that might affect his ability to pay this penalty.

23       He must submit his person, property, house, residence,

24  office, vehicle, papers, computers, other

25  electronic-communications or data-storage devices or media to a

search conducted by a U.S. Probation Officer.  Failure to submit to a search may be grounds for revocation of release. Mr. Gunn must warn any other occupants that the premises may be subject to searches pursuant to this condition.  The probation officer may conduct a search under this condition only when reasonable suspicion exists that Mr. Gunn has violated a condition of supervision and that the areas to be searched contain evidence of this violation.  Any search must be conducted at a reasonable time and in a reasonable manner.

Mr. Gunn must participate in a sex offense specific treatment program and follow the rules and regulations of the program.  The probation officer will supervise his participation in the program.  He must pay the cost of treatment in an amount to be determined by the probation officer based on ability to pay or the availability of third-party payment.

He must submit to periodic polygraph testing at the discretion of the probation officer as a means to ensure that he is in compliance with the requirements of his supervision or treatment program.

He must not have direct contact with any child that he knows or reasonably should know to be under the age of 18, including his own children, without the permission of the probation officer.  If he has any direct contact with any child that he knows or reasonably should know to be under the age of

18, including his own children, without the permission of the probation officer, he must report the contact to the probation officer within 24 hours.  Direct contact includes written communication, in-person communication or physical contact. Direct contact does not include incidental contact during ordinary daily activities in public places.

He must not view or possess any visual depiction including any photograph, film, video, picture or computer or computer-generated image or picture whether made or produced by electronic, mechanical or other means of sexually explicit conduct.  He must not go to or remain at any place where he knows children under the age of 18 are likely to be, including parks, schools, playgrounds, and childcare facilities.

He must submit his computers or other electronic-communication or data-storage devices or media to search.  He must warn any other people who use these computers or devices capable of accessing the internet that the devices may be subject to searches pursuant to this condition.  The probation officer may conduct a search pursuant to this condition only when reasonable suspicion exists that there is a violation of a condition of supervision and that the computer or device contains evidence of the violation.  Any search will be conducted at a reasonable time and in a reasonable manner.

He must comply with a curfew from 10 p.m. to 6 a.m. daily during supervised released.  During the curfew time he

1    must remain at his place of residence at all times and shall

2    not leave except when the leave is approved in advance by the

3    probation officer.

4         I direct the probation officer to provide Mr. Gunn

5    with a written statement which sets forth all of the conditions

6    to which the term of supervised release is subject.

7         I now order that he is remanded to the custody of the

8    United States Marshal.  In light of the concerns expressed by

9    the government on behalf of the victim in this case as to the

10   location of Mr. Gunn's incarceration, I will not make any

11   recommendation to the Bureau of Prisons.  I will leave that up

12   to the discretion of the Bureau of Prisons.  Certainly, the

13   information stated here today will be reflected in the judgment

14   and the Bureau of Prisons can consider all of that in due

15   course.

16        Mr. Gunn, you are now advised that you have a right to

17   appeal from today's sentence within 14 days from this date.  If

18   you fail to appeal within the 14-day period, that shall be a

19   waiver of your right to appeal.  The government may also file

20   an appeal from this sentence.  You are advised that you are

21   entitled to the assistance of counsel in taking an appeal and

22   if you are unable to afford a lawyer, one will be provided for

23   you.  If you so request, the Clerk of Court will prepare and

24   file a notice of appeal on your behalf.

25        In the event of appeal it will be the obligation and

1   responsibility of your counsel to continue his representation

2   on appeal unless and until he is relieved by order of the

3   Eleventh Circuit Court of Appeals.

4          Sentence in this case has now been pronounced by this

5   court.  Other than any objections which have previously been

6   stated for the record, does anyone now have any objections to

7   the Court's findings of fact, conclusions of law or to manner

8   in which the sentence was pronounced by the Court?

9          Ms. Lyons?

10          MS. LYONS:  No, Your Honor.

11          THE COURT:  Mr. Merzlak?

12          MR. MERZLAK:  No, Your Honor.

13          THE COURT:  With that, sentencing is now concluded.

14   Thank you.

15      (The hearing is concluded.)

1                    CERTIFICATE OF REPORTER

2

3

4

5        I, Lisa H. Davenport, Federal Official Reporter, in and

6   for the United States District Court for the Southern District

7   of Georgia, do hereby certify that pursuant to Section 753,

8   Title 28, United States Code that the foregoing is a true and

9   correct transcript of the stenographically-reported proceedings

10  held and that the transcript page format is in conformance with

11  the regulations of the Judicial Conference of the United

12  States.

13

14                      _____

15                      Lisa H Davenport, RPR, FCRR

16                      Federal Official Reporter

17

18

19

20

21

22

23

24

25